COMMONWEALTH of Kentucky ex rel., Gregory D. STUMBO, Attorney General, Appellant,

v.

PHILIP MORRIS, USA; R.J. Reynolds Tobacco Company; Lorillard Tobacco Company; Commonwealth Brands, Inc.; Liggett Group LLC; Sherman 1400 Broadway N.Y.C., Inc.; King Maker Marketing, Inc.; Japan Tobacco International USA, Inc.; Kretek International, Inc.; P.T. Djarum; Liberty Brands, LLC; Vibo Corporation, d/b/a General Tobacco; Santa Fe Natural Tobacco Company, Inc.; Von Eicken Group; Farmers Tobacco Co. of Cynthiana, Inc.; and Top Tobacco, L.P., Appellees.

No. 2006–CA–001425–MR.

Court of Appeals of Kentucky.

Nov. 2, 2007.

Discretionary Review Denied by Supreme Court Feb. 13, 2008.

See also 232 S.W.3d 559.

Larry C. Deener, Elizabeth A. Deener, Landrum & Shouse LLP, Lexington, KY, for Appellant.

David T. Schaefer, Woodward Hobson & Fulton, L.L.P., Louisville, KY, for appellee Philip Morris USA.

Charles S. Cassis, Theresa A. Canaday, Frost Brown Todd LLC, Louisville, KY, Steve Patton, Kirkland & Ellis, Chicago, IL, for appellees R.J. Reynolds And Lorillard Tobacco Company.

Robert J. Brookhiser, Elizabeth B. McCallum, Howery LLP, Washington, D.C., J. Guthrie True, Johnson True & Guarnieri, Frankfort, KY, for Appellees Commonwealth Brands, Inc.; Liggett Group LLC; Sherman 1400 Broadway N.Y.C., Inc.; King Maker Marketing, Inc.; Japan Tobacco International USA, Inc.; Kretek International, Inc.; P.T. Djarum; Liberty Brands, LLC; Vibo Corporation, d/b/a General Tobacco; Santa Fe Natural Tobacco Company, Inc.; Von Eicken

Group; and Farmers Tobacco Co. of Cynthiana, Inc.

Before LAMBERT, TAYLOR, and WINE, JUDGES.

### OPINION AND ORDER

LAMBERT, Judge.

The Commonwealth of Kentucky appeals from an Order of the Franklin Circuit Court compelling arbitration and staying its Motion for Declaratory Judgment. For the reasons set forth herein, we dismiss this appeal.

In November 1998, the Attorneys General of forty-six states and six territories (hereinafter "the Settling States"), including Appellant, the Commonwealth of Kentucky, and the four major domestic tobacco companies—Philip Morris, R.J. Reynolds, Brown & Williamson,[1] and Lorillard (hereinafter the "Original Participating Manufacturers" or "OPMs")—signed the Tobacco Master Settlement Agreement (hereinafter the "MSA") ending nationwide litigation by those Attorneys General seeking compensation for their respective state costs for smoking-related illnesses. In return for a release by the Settling States, the OPMs promised, *inter alia:* (1) to make certain settlement payments to the Settling States, including annual payments in perpetuity; (2) to fund a national foundation devoted to educating the public about the dangers of tobacco use; and (3) to adhere to restrictions on their advertising, marketing, and other practices. The Franklin Circuit Court approved the MSA in 1998 and entered a Consent Decree in the civil action from which this appeal emanates.

*See Arnold v. Commonwealth, ex rel., Chandler,* 62 S.W.3d 366 (Ky.2001).

The MSA authorizes other tobacco product manufacturers to adopt and to participate in the MSA. These "Subsequent Participating Manufacturers" or "SPMs" agreed to make similar annual settlement payments to the Settling States and to adhere to the same restrictions on their advertising, marketing, and other practices as the OPMs. OPMs and SPMs are collectively the "Participating Manufacturers" or "PMs." To date, approximately $41 billion has been paid to the Settling States pursuant to the MSA, with the Commonwealth of Kentucky receiving 1.7611586% of each payment.

The provisions of the MSA pertinent to this appeal are in §§ VII(a) and (c) and § XI(c), in which "MSA Courts" for each state were established to have exclusive jurisdiction over MSA disputes within each Settling State. Sections VII(a) and (c), the jurisdictional provisions, read in pertinent part as follows:

(a) *Jurisdiction.* Each Participating Manufacturer and each Settling State acknowledge that the Court: (1) has jurisdiction over the subject matter of the action identified in Exhibit D in such Settling State and over each Participating Manufacturer; (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree as to such Settling State; and (3) except as provided in subsections IX(d), XI(c) and XVII(d) and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State....

---

1. Brown & Williamson and R.J. Reynolds have merged and operate under the name

Reynolds American International.

(c) *Enforcement of this Agreement.*

(1) Except as provided in subsections IX(d), XI(c), XVII(d) and Exhibit O, any Settling State or Participating Manufacturer may bring an action in the Court to enforce the terms of this Agreement (or for a declaration construing any such term ("Declaratory Order")) with respect to disputes, alleged violations or alleged breaches within such Settling State.

The MSA Court for Kentucky is the Franklin Circuit Court. The MSA thus makes a comprehensive acknowledgment of jurisdiction in the Franklin Circuit Court, stating only specific limited exceptions. One of those is the exception set forth in § XI(c), which states:

*Resolution of Disputes:* Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carryforwards, and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

Under the terms of the MSA, annual payments of PMs are subject to adjustments. For example, an "Inflation Adjustment" upward is applied annually for inflation, and a "Volume Adjustment" downward is applied based upon the amount that annual sales fall below sales in the base year of 1997. Addressed in this appeal is the "NPM Adjustment." The "NPM Adjustment" potentially is a significant downward adjustment crafted to adjust for any market share loss of PMs to "Non–Participating Manufacturers" or "NPMs" as a result of the MSA.

At the time the MSA was negotiated, there was concern that NPMs would use their competitive advantages to increase their cigarette sales and accumulate short-term profits without providing security for future damages under the MSA. Therefore, each State was encouraged to enact a "Qualifying Statute," which was designed to "effectively and fully neutralize[ ] the cost disadvantages that the [PMs] experience vis-àvis [NPMs] within such Settling States as a result of the [MSA]." § IX(d)(2)(E). These statutes impose escrow obligations on NPMs in amounts roughly comparable to the PMs' MSA payment obligations. If any Settling State does not enact and diligently enforce its Qualifying Statute, and certain other conditions precedent are not met, then the State's annual MSA payments will be substantially reduced or potentially eliminated by an NPM Adjustment.

The MSA contains a Model Escrow Statute which the parties agreed constituted a Qualifying Statute. MSA § IX(d)(2)(E). Subsequent to signing the MSA, the Commonwealth of Kentucky adopted the Escrow Statute as KRS 131.600–602 and has since continued to have it in full force and effect. Pursuant to this statute, NPMs doing business in Kentucky must name the Commonwealth of Kentucky as a beneficiary to the escrow account. *Id.*

The potential NPM Adjustment for calendar year 2003—the only year at issue here—totals over $1.2 billion for all Settling States. This adjustment could substantially reduce the payment that otherwise was due in April 2006 by an approximate $20.1 million NPM Adjust-

ment for Kentucky, which is Kentucky's allocable share of the potential $1.2 billion NPM Adjustment.

There are two requirements to calculate the 2003 NPM Adjustment to the 2003 Annual Payment. § IX(d)(1).[2] First, the Independent Auditor selected under the MSA must determine that a "Market Share Loss" occurred for the PMs during 2003. § IX(d)(1)(B)(I). This was done in this case. The Independent Auditor also calculated a potential maximum 2003 NPM Adjustment to the aggregate MSA payments due on April 15, 2004. *Id.* Thus the first condition to any ultimate application of the 2003 NPM Adjustment had been met.

Next it has to be shown that the terms and effect of the MSA have been "a significant factor contributing to the Market Share Loss" for 2003 sales. § IX(d)(1)(C). Initially, the "Firm" (an economic consulting firm separately selected under the MSA) made no Significant Factor Determination. On March 27, 2006, however, the Firm made the Significant Factor Determination, concluding that the MSA was "more likely than not" a significant factor in the 2003 Market Share Loss. This satisfied the second condition to the ultimate application of the 2003 NPM Adjustment.

Although every Settling State had a Qualifying Statute in effect in 2003, there had been no determination as to whether or not any State had diligently enforced its Qualifying Statute in 2003. In fact, no proceeding seeking to prove that any State had failed to enforce its Qualifying Statute had commenced anywhere. Thus, the Independent Auditor observed that, irrespective of what the Firm's Significant Factor Determination might be:

NAAG [National Association of Attorneys General] has responded to the [Independent Auditor's] Information Request ... stating that all Settling States have enacted Model Statutes and represent [the Statutes] to have been in full force and effect continuously since the indicated effective date; therefore, no possible NPM Adjustment is allocated to PMs.

The Independent Auditor added that:

The Independent Auditor is not charged with the responsibility under the MSA of making a determination regarding this [diligent enforcement] issue. More importantly, the Independent Auditor is not qualified to make the legal determination as to whether any particular Settling State has "diligently enforced" its Qualifying Statute....Until such time as the parties resolve this issue or the issue is resolved by a trier of fact, the Independent Auditor will not modify its current approach to the calculation.

The original issue in this case was whether Kentucky "diligently enforced" the Qualifying Statute as enacted in KRS 131.600–131.602. Therefore, to establish that it had complied with the MSA, the Commonwealth moved the Franklin Circuit Court on April 21, 2006, for a declaratory order that it had diligently enforced KRS 131.600–131.602 in 2003 under MSA § VII. Philip Morris, et al., disputed the Commonwealth's claim of diligent enforcement and filed a Motion to Compel Arbitration and to Dismiss or Stay the Motion for Declaratory Judgment. In their Motion, Philip Morris, et al., claimed that the determination of "diligent enforcement" was subject to arbitration under provisions of the MSA. The Commonwealth objected to arbitration stating that jurisdiction to

---

**2.** The NPM Adjustment for SPMs is calculated under MSA § IX(d)(4), but the process is substantially similar.

enforce the MSA in Kentucky and to decide this issue was vested with the Franklin Circuit Court.

The matter was heard on June 8, 2006, and the court entered a ruling granting the Motion to Compel Arbitration and staying the Motion for Declaration. It specifically held that the diligence determination "must be made by the arbitration panel . . . because it arises out of a determination by the Independent Auditor." In addition to relying on the language of the MSA, the court recognized that to permit fifty-two different State courts rather than a single arbitration panel to address the issue "would promote chaos." The court designated the order "final and appealable," and this appeal followed.

The issue before this Court is whether an order compelling arbitration is final and appealable. We have long held that:

> [r]esolution of this issue may be had by reference to KRS Chapter 417, regarding arbitration. KRS 417.050 provides that arbitration agreements are valid and enforceable. If a party to an agreement refuses to arbitrate, the Court may compel arbitration. If the party disputes the existence of said arbitration agreement, the Court may render summary findings on that issue. If an agreement is found to exist, the Court then shall order the parties to arbitrate. KRS 417.050.
>
> KRS 417.220 states as follows:
>
> Appeals.-(1) An appeal may be taken from:
>
> (a) An order denying an application to compel arbitration made under KRS 417.060;

(b) An order granting an application to stay arbitration made under subsection (2) of KRS 417.060;

(c) An order confirming or denying confirmation of an award;

(d) An order modifying or correcting an award;

(e) An order vacating an award without directing a rehearing; or

(f) A judgment or decree entered pursuant to the provisions of this chapter.[3]

(2) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

It is clear that the list specifically does not include court orders compelling arbitration. The events from which an appeal may be had all have one thing in common, namely, that arbitration has either been *denied* or has *already occurred*.

*See Fayette County Farm Bureau Fed'n v. Martin,* 758 S.W.2d 713, 713–14 (Ky.App. 1988).

Moreover, the fact that the Circuit Court's Order recites that it is "final and appealable" does not make it so. *Francis v. Crounse Corp.,* 98 S.W.3d 62, 65 (Ky. App.2002); *Hook v. Hook,* 563 S.W.2d 716 (Ky.1978); *Roman Catholic Bishop of Louisville v. Burden,* 168 S.W.3d 414, 415 (Ky.App.2004). In any event, the Order itself demonstrates that it is not a final order. It specifically *stayed* rather than dismissed the litigation pending completion of the arbitration proceeding, which clearly distinguishes this case from *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), on which the Commonwealth relies. *See Id.* at 87 n.

---

**3.** This section obviously refers back to KRS 417.180, which reads:

Judgment or decree on award.-Upon the granting of an order confirming, modifying or correcting, an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court.

2, 121 S.Ct. 513. Contrary to the Commonwealth's contentions, it is not irrevocably deprived of anything by submission to arbitration. Instead it is protected by the right to appeal any final Circuit Court judgment resulting from the arbitration.

For the foregoing reasons, the above-styled appeal is hereby dismissed for failure of appellant to appeal from a final and appealable order.

ALL CONCUR.