R. Dean LINDEN, Ph.D.,
Appellant/Cross–
Appellee

v.

William Tid GRIFFIN; Jeff Varner; Chad Estes; Hartley Blaha; Ronald Bowman, Jr.; Steven Stengell; James E. Shane; and Allied Energy, Inc., Appellees/Cross–Appellants.

Nos. 2011–SC–000422–DG,
2012–SC–000377–DG.

Supreme Court of Kentucky.

April 17, 2014.

As Modified on Denial of Rehearing
Aug. 21, 2014.

Ann B. Oldfather, Robert Sean Deskins, Donald L. Cox, John Davis Cox, for Appellant/Cross–Appellee.

J. Kent Wicker, Jennifer Anne Schultz, for Appellees/Cross–Appellants.

Opinion of the Court by Justice CUNNINGHAM.

In 2006, Dr. R. Dean Linden and William Tid Griffin developed an industrial gravity and vacuum pressure filtration system. This technology, at its most basic level, separates liquid and solid components from sewage waste. In 2007, Linden and Griffin formed Gryphon Environmental, LLC ("Gryphon" or the "Company") to market and sell the filtration system. Linden maintains that this technology has a future estimated value of approximately two billion dollars. At its inception, Linden and Griffin agreed to be co-founders and equal owners of Gryphon. Linden served as President, Chief Executive Officer, Operating Manager, and Director. Griffin served as Chairman of the Board. Both Linden and Griffin signed an operating agreement ("Original Operating Agreement") in May of 2007.

Gryphon experienced growth and added additional members, including the named Defendants who share the interests of Griffin in this action. For the sake of simplicity, their interests are addressed under the Griffin name. Still needing further capital, and in order to attract new investors, Linden and Griffin retained Greenebaum, Doll and McDonald, PLLC to amend the Company's Private Placement Memorandum ("PPM") and Original Operating Agreement. Linden claims that Gryphon's lawyers and Griffin himself each represented to Linden that the PPM and the Amended Operating Agreement ("Amended Agreement") would not alter any of the members' material rights provided for in the Original Operating Agreement.

By July of 2008, the Amended Agreement had been formulated and signed by all members of the Company. At least two material provisions, which were not

included in the Original Operating Agreement, were added to the Amended Agreement. Specifically, § 17.4(a) added an involuntary purchase price sales provision and § 21.7 included an arbitration clause. It is unclear whether Linden actually reviewed the Amended Agreement before signing it. However, as evidenced from this lawsuit, Linden denies being aware of the inclusion of the arbitration and involuntary purchase price provisions.

Linden and Griffin began having disputes over Gryphon's management in late 2008. A Company meeting was held in January of 2009. Linden claims that he received no notice of the meeting and, therefore, did not attend. During this meeting, Gryphon's members unanimously voted to remove Linden as an officer and director of the Company. The members also voted to remove Linden as an authorized signatory of Gryphon's bank account. The Defendants maintain that Linden's removal was due to his misconduct and poor performance. The Defendants also alleged that Linden had persuaded potential investors to invest in another company in which he held an interest.

After the January 2009 meeting, Linden issued himself a check, or several checks, from Gryphon's bank account as reimbursement for Company expenses. Gryphon's bank failed to honor these checks, resulting in the filing of a criminal complaint against Linden and the freezing of his personal account. It is Linden's contention that he was unaware that he no longer had authority to issue and cash checks from Gryphon's bank account. Additionally, Linden claims Griffin was the individual who filed the criminal complaint. The record, however, is unclear as to who instituted the criminal complaint or if criminal charges resulted.

Linden filed suit against the Defendants in the Jefferson Circuit Court on April 2, 2009, alleging fraud, defamation, abuse of process, breach of fiduciary duties, Blue Sky violations, mutual mistake, and/or unilateral mistake coupled with fraud in the inducement. Linden's complaint also requested declaratory judgment, accounting, and injunctive relief. On April 9, 2009, the Defendants filed a motion to stay proceedings and compel arbitration pursuant to § 21.7 of the Amended Agreement. A hearing on the matter was conducted on May 11, 2009. The trial court issued an order on May 15, 2009, compelling arbitration on all counts of the complaint, with the exception of the claims involving defamation and abuse of process.

Pursuant to Kentucky Revised Statutes (KRS) 417.220(1)(a), the Defendants appealed the portion of the trial court's order denying their request to compel arbitration on the claims of defamation and abuse of process. Due to the case being appealed, the trial court refrained from ruling on Linden's request for injunctive relief. As a result, Linden petitioned the Court of Appeals for a writ of mandamus. The Court of Appeals denied the petition, after which Linden appealed to this Court. We denied Linden's petition, holding that once a notice of appeal is filed the trial court no longer retains jurisdiction to rule on motions for injunctive relief. *Linden v. Cunningham,* No. 2010–SC–000152–MR, 2010 WL 5258474 (Ky. Dec. 16,2010).

Linden also appealed the trial court's order compelling arbitration. Linden's appeal presented the Court of Appeals with a bevy of arguments, including the constitutionality of KRS 417.220(1)(a), the validity and scope of the arbitration clause, and whether, post appeal, the trial court would retain jurisdiction to issue an injunction pending arbitration. Both Linden's and the Defendants' appeals were consolidated. The Court of Appeals ultimately affirmed the entirety of the trial court's order com-

pelling arbitration and held that KRS 417.220(1)(a) passes constitutional muster. Lastly, the Court of Appeals determined that the trial court retained jurisdiction to issue equitable relief in order to preserve the status quo pending arbitration.[1] We granted discretionary review.

### Jurisdiction

This Court has jurisdiction to review final and appealable orders in addition to certain orders that are interlocutory in nature. *See Breathitt Cnty. Bd. of Educ. v. Prater,* 292 S.W.3d 883, 885 (Ky. 2009). The trial court's May 15, 2009, order granting, in part, and denying, in part, the Defendants' motion to compel arbitration is an interlocutory order, an order that ordinarily would not give rise to appellate jurisdiction. While neither party claims that this Court lacks jurisdiction, we nevertheless have an independent duty to address our jurisdictional concerns.

We will begin our analysis with the Defendants' appeal. The Defendants timely sought review pursuant KRS 417.220(*l*)(a). This statute circumvents the finality requirement and states that "[a]n appeal may be taken from [ ][a]n order *denying* an application to compel arbitration. . . ." KRS 417.220(1)(a) (emphasis added). Thusly, this Court has jurisdiction to consider the merits of the Defendants' appeal.

The situation with Linden is quite different, however. KRS 417.220(1)(a) does not provide for an interlocutory appeal from an order compelling arbitration. Accordingly, this Court has recognized that generally such an order is not immediately appealable. *Ally Cat, LLC v. Chauvin,* 274 S.W.3d 451, 454 (Ky.2009) ("An order compelling arbitration under a valid arbitration agreement is, ordinarily, not appealable."); *Am. Gen. Home Equity, Inc. v. Kestel,* 253 S.W.3d 543, 557 n. 2 (Ky. 2008) (citing *Fayette Cnty. Farm Bureau Fed'n v. Martin,* 758 S.W.2d 713, 714 (Ky. App.1988)) ("Unlike an order denying a motion to compel arbitration that is explicitly held to be appealable under KRS 417.220(1)(a), an order compelling arbitration is not immediately appealable."). Linden did not appeal from the trial court's May 15, 2009, order.

Several months later, however, in October 2009, during the pendency of the Defendants' appeal, the trial court purported to amend its May order and to make the part of it compelling arbitration final and appealable by adding a Kentucky Rules of Civil Procedure (CR) 54.02 certificate of finality.[2] *Watson v. Best Fin. Serv., Inc.,* 245 S.W.3d 722 (Ky.2008). Linden thereupon appealed from those portions of the trial court's amended order compelling arbitration, and the Court of Appeals consolidated Linden's appeal with the Defendants' already pending one.

As noted above, however, in October 2009 when the trial court attempted to amend its arbitration order, jurisdiction over the matter had lodged in the Court of Appeals. *Linden v. Cunningham, supra* (citing *Johnson v. Commonwealth,* 17 S.W.3d 109 (Ky.2000), and *City of Devondale v. Stallings,* 795 S.W.2d 954 (Ky. 1990)). At that point, therefore, the trial court lacked jurisdiction to amend its order and the certificate of finality was, thus,

---

1. We acknowledge this issue survives our dismissal of Linden's appeal for want of jurisdiction; but, considering no injunction preserving the status quo has been sought, the issue was never ripe for appellate review.

2. CR 54.02(1) provides, in part, that "[w]hen more than one claim for relief is presented in an action ... the court may grant a final judgment upon one or more but less than all of the claims ... only upon a determination that there is no just reason for delay."

a nullity providing no basis for Linden's appeal.

Even if in October 2009 the trial court was not without some authority to revisit its arbitration order, its CR 54.02 ruling would still be unavailing to Linden, because in *Commonwealth ex rel. Stumbo v. Philip Morris, USA*, 244 S.W.3d 116, 120 (Ky.App.2007), the Court of Appeals ruled that an interlocutory order compelling arbitration is not certifiable under the rule. Our recognition in *Ally Cat, supra,* and *Hathaway v. Eckerle*, 336 S.W.3d 83 (Ky. 2011), furthermore, that relief by way of mandamus or prohibition may be available where arbitration has been compelled also supports the conclusion that interlocutory relief by way of appeal is not available.[3] In sum, Linden has attempted to appeal from a non-final order, which we lack jurisdiction to review.

### *Scope of the Arbitration Clause*

■■■ Having concluded that this Court maintains jurisdiction over the Defendants' appeal, we will now determine whether Linden's defamation and abuse of process claims are arbitrable. To begin our analysis, we note that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Additionally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *See Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 855 (Ky.2004) (citing

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

The arbitration agreement is found in § 21.7 of the Amended Agreement, which states the following:

> [I]f *any dispute shall arise between the Interest Holders as to their rights or liabilities under this agreement,* the dispute shall be exclusively determined, and the dispute shall be settled, by arbitration in accordance with the commercial rules of the American Arbitration Association.

The plain language of the arbitration agreement makes clear that if Linden's claims against Griffin relate to the rights and liabilities as outlined in the Amended Agreement, then those claims must be arbitrated. The Amended Agreement bestows upon both Linden and Griffin numerous rights and responsibilities. For example, § 4 and § 5 of the Amended Agreement set forth ownership and membership rights, while § 12 provides for the duties and liabilities of the Company's officers.

### *Defamation*

■■■ The defamation claim consists of defamatory statements made by Griffin accusing Linden of misappropriating Company funds. After carefully reviewing the Amended Agreement, we could find no language indicating that a Company member has the right be free from defamatory statements or a responsibility to refrain from defaming other members. This personal dispute is clearly independent of the

---

**3.** The case before us concerns whether an interlocutory appeal may be taken from an order compelling arbitration. While distinct, our holding today is in line with our recent decision in *JPMorgan Chase Bank, N.A. v. Bluegrass Powerboats*, 424 S.W.3d 902 (Ky. 2014), in which we made clear that an appeal

of right may be taken at the conclusion of a case where the formation of an arbitration agreement is disputed. *Id.* at 908 ("*[W]hether* there is an arbitration agreement is a separate and distinct legal question—a question of state law—that cannot evade appellate review.").

rights and liabilities of Company members and does not fall within the parties' contemplated dealings. *See Hill v. Hilliard,* 945 S.W.2d 948, 952 (Ky.App.1996) (finding that claims of assault, battery, false imprisonment, and intentional infliction of emotional distress did not fall within the scope of the arbitration agreement because they were independent of the employment relationship).

### Abuse of Process

 Similar to the defamation claim, the rights and liabilities listed in the Amended Agreement have no bearing on Linden's abuse of process claim. Linden alleged that Griffin wrongly instituted a criminal complaint against him as a result of Linden's questionable reimbursement. Griffin's independent action to take out a criminal complaint was not contingent on any of the rights or liabilities as espoused in the Amended Agreement. For example, the Amended Agreement did not supply a clause requiring Company members to file criminal complaints upon suspicion of fraudulent reimbursements. As a result, we have serious reservations in concluding that the signatories to the Amended Agreement intended for this non-business related tort to fall within the scope of the arbitration agreement. *See First Options,* 514 U.S. at 945, 115 S.Ct. 1920 (warning against "forc[ing] unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide[ ]").

Thusly, we agree with the trial court and the Court of Appeals that Linden's defamation and abuse of process claims fall outside the scope of the parties' agreement to arbitrate.

### Conclusion

In summation, this Court finds that it lacks jurisdiction to consider the merits of Linden's appeal. Furthermore, we affirm the Court of Appeals' determination that the abuse of process and defamation claims fall outside the agreement to arbitrate. For the foregoing reasons, we affirm the opinion of the Court of Appeals, in part, and reverse, in part. We also hereby remand this case to the Court of Appeals with instructions for it to dismiss Linden's appeal pursuant to CR 73.02(2).

All sitting. All concur.