RENDERED: OCTOBER 1, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1033-MR

COAL-MAC, LLC                                            APPELLANT


                   APPEAL FROM PIKE CIRCUIT COURT
v.               HONORABLE THOMAS SMITH, SPECIAL JUDGE
                        ACTION NO. 20-CI-00686


JON BLAIR; BRYAN BROWNING;
DAVID BOOTH; DAVID MCNEELY;
JOSH HENSLEY; LARRY PARIS;
RANDY CHYRSSOFOS; AND
RONALD SPAULDING                                  APPELLEES


## OPINION
## AFFIRMING

\*\* \*\* \*\* \*\* \*\*

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE: The question in this appeal is whether the trial court erred by denying a motion to compel arbitration filed by Coal-Mac, LLC. We affirm, though our analysis differs somewhat from that used by the trial court.

In December 2019, while employed by Coal-Mac, each Appellee separately signed an arbitration agreement. In relevant part, those identical agreements provided:

> **ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE EMPLOYMENT RELATIONSHIP SHALL BE ARBITRATED PURSUANT TO THE [FEDERAL ARBITRATION] ACT.**
>
> . . .
>
> By signing this Agreement, the Parties agree to submit all past, present, and future disputes that arise between them to final and binding one-on-one arbitration. . . . The Parties mutually waive their rights to go to court in exchange for this right to arbitrate. . . . This Agreement between the Parties to arbitrate all disputes or claims of any kind includes . . . claims relating to employment or termination from employment. This shall also include claims for wages or other compensation due, claims for breach of any contract, tort claims, or claims based on public policy.

Record on Appeal (R.) at 23 (paragraph breaks omitted).

About two months later, Coal-Mac executed a reduction in force, pursuant to which Coal-Mac and each named Appellee entered into identical severance agreements. Although portions of the severance agreements in the record are blurry, the following relevant excerpts are legible:

> Employer agrees to pay Employee . . . [a specified] lump sum amount . . . [and] Employee . . . releases and forever discharges Employer . . . from and against all claims . . . arising out of, or relating in any way to, . . .

Employee's employment with Employer. . . . This writing is intended by the Parties to be the final, complete and exclusive statement of their agreement about the matters covered herein[.] . . . [T]he signatures of the Parties below shall confirm that they have not relied upon any representations or statements not set forth in this Agreement. . . . The parties further agree that the courts of the State of Kentucky shall have exclusive jurisdiction to resolve disputes that may arise between the Parties.

R. at 77-80 (paragraph breaks omitted).[1]

In March 2020, Coal-Mac sent a letter to each Appellee stating that each was due half of the amount listed in their severance agreement due to a miscalculation by Coal-Mac. Unsurprisingly unhappy, the Appellees filed a breach of contract action against Coal-Mac. Coal-Mac moved the Pike Circuit Court to stay the proceedings and to compel arbitration. In August 2020, the trial court denied Coal-Mac's motion, after which Coal-Mac filed this appeal. *See* Kentucky Revised Statute (KRS) 417.220(1)(a) (generally permitting a party to appeal the denial of a motion to compel arbitration).

When reviewing an order denying enforcement of an arbitration agreement, we examine the trial court's findings of facts pursuant to the clearly erroneous standard and then review its legal conclusions *de novo*. *Padgett v. Steinbrecher*, 355 S.W.3d 457, 459 (Ky. App. 2011). Here, the order denying

---

[1] The sample severance agreement in the record is unsigned but there is no dispute that it accurately reflects the identical severance agreements signed by each Appellee and a representative of Coal-Mac.

arbitration is remarkably terse, substantively consisting of only a partial sentence in which the court "find[s] that the severance agreements contained no arbitration clauses and further find[s] that the severance agreements did not incorporate any past arbitration agreements by reference[.]" R. at 89. However, because the core facts necessary to resolve the sole question in this appeal – whether the Appellees' claims are subject to mandatory arbitration – are undisputed, we focus upon a *de novo* review of the court's takeaway conclusion, with which we agree.

Briefly, the trial court apparently believed the arbitration agreements were unenforceable because they were not referred to, or expressly incorporated by, the severance agreements. But no reference or explicit incorporation would have been necessary if the severance agreements had not directly contradicted the arbitration agreements. Indeed, neither the trial court nor the parties cite binding authority which conditions the applicability of an otherwise applicable arbitration agreement upon it having been expressly incorporated into a subsequent contract.

The arbitration agreements sweepingly provided that they applied to "all past, present, and future disputes" that arose between Coal-Mac and each named employee, such as "claims relating to employment or termination from employment[,]" including "claims for wages or other compensation due" and "claims for breach of any contract[.]" R. at 23. Appellees' breach of contract claims against Coal-Mac seeking additional compensation allegedly due them thus

fall squarely within the plain language of the arbitration agreements. *See, e.g.*, *Linden v. Griffin*, 436 S.W.3d 521, 525-26 (Ky. 2014) (holding that an arbitration agreement is a contract and determining whether claims fall within the agreement according to its plain language).

However, though surprisingly not directly addressed by the trial court, the dispute resolution clause of the severance agreements is diametrically contrary to the arbitration agreements. Under the accepted contract interpretation principles we will soon discuss, the later severance agreements' dispute resolution clauses supersede the conflicting prior arbitration agreements under these facts.[2]

The last sentence of the severance agreements is: "The Parties further agree that the courts of the State of Kentucky shall have exclusive jurisdiction to resolve disputes that may arise between the Parties." R. at 80. That language, Coal-Mac's unavailing arguments to the contrary notwithstanding, flagrantly contradicts language in the arbitration agreements providing that "a neutral arbitrator will decide any legal dispute between the Parties instead of a judge or jury" because "[t]he Parties mutually waive their rights to go to court in exchange for this right to arbitrate." R. at 35. The arbitration agreements call for all disputes

---

[2] We may affirm a trial court for any reason supported by the record, even if we base our decision on alternate grounds not expressed by the trial court. *See, e.g.*, *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 495-97 (Ky. 2014). In fact, our Supreme Court has forcefully commanded that "[i]f an appellate court is aware of a reason to affirm the lower court's decision, *it must do so*, even if on different grounds." *Id*. at 496 (emphasis added).

-5-

to be arbitrated; the severance agreements call for disputes arising thereunder to be resolved exclusively by Kentucky courts. The conflict between the two agreements thus is obvious and beyond reasonable dispute, despite Coal-Mac's inexplicably, incorrectly insisting that the severance agreements are "not *inconsistent* with the Arbitration Agreement[s]." Reply brief, p. 5. In short, the dueling dispute resolution requirements of both agreements cannot both be satisfied. Therefore, one must yield to the other as the choice is binary – these claims must be resolved by a court or by an arbitrator as they cannot simultaneously proceed before both.

When there is an irreconcilable conflict between the language of two contracts, the second contract is generally deemed to have superseded the first as the later contract provides the parties' most recent terms of agreement. In other words, parties may modify the terms of an initial contract with a later contract, and if the two contracts conflict, the latter controls. *See, e.g.*, 17A AM. JUR. 2d *Contracts* § 489 (2021) (footnote omitted) ("Parties may modify the terms of their agreement and if the terms of a subsequent agreement contradict the earlier agreement, the terms of the later agreement prevail, and supersede those of the earlier contract."); 17A C.J.S. *Contracts* § 580 (2021) ("When parties have successive contracts addressing the same subject matter, it is a well-settled principle of law that the later contract supersedes the former contract as to

-6-

inconsistent provisions."); *Menefee v. Rankins*, 158 Ky. 78, 164 S.W. 365, 368 (1914) ("While it is true that the intention of the parties should govern in the instruction of written instruments, and, in ascertaining this, regard should be had to the nature of the instrument and to the condition of the parties, it is no less true, as previously stated, that, when a new contract between the same parties with reference to the same subject-matter is so inconsistent with or repugnant to the former contract as to render its performance impossible, the former contract must be treated as rescinded or abrogated by the latter.").

Stated otherwise, the severance agreements here operated as implied novations of the arbitration agreements regarding the forum for resolving disputes arising under the severance agreements since the language in the severance agreements vesting Kentucky courts with exclusive jurisdiction to resolve disputes arising thereunder is "manifestly in place of or inconsistent" with language in the arbitration agreements requiring all disputes between the parties to be resolved via mandatory arbitration. *White/Reach Brannon RD., LLC v. Rite Aid of Kentucky, Inc.*, 488 S.W.3d 631, 636-37 (Ky. App. 2016).[3]

---

[3] Each severance agreement provides that it is intended to be "the final, complete and exclusive statement about the matters covered herein[.]" R. at 79. Thus, it is clear that the parties did not intend for *any* other prior agreements, which necessarily includes the arbitration agreements, to impact the otherwise clear language of the severance agreements.

The arbitration agreements reflect an obligation to resolve all disputes via arbitration. But parties can enter into new contracts based upon new situations and Coal-Mac and the Appellees did just that when they subsequently agreed to resolve any disputes arising under the severance agreements via the Kentucky Court of Justice. So, the clause in the severance agreements vesting jurisdiction to resolve disputes in Kentucky courts implicitly overrides, or supersedes, the arbitration agreements since the language of the two agreements is irreconcilable. Thus, we cannot order arbitration of these severance agreement-based claims under either the Kentucky or Federal Arbitration Acts because the parties expressly gave jurisdiction of them to the Kentucky courts – not an arbitrator – and have cited no authority under either Act requiring arbitration under these facts.[4] *Linden*, 436 S.W.3d at 525 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995)) (holding that arbitration "is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration.").

In sum, the trial court properly refused to compel arbitration. We have considered all the arguments in the parties' briefs, but deem any argument not expressly addressed herein to be redundant, irrelevant, or otherwise without merit.

---

[4] We hold only that the disputes at hand are not subject to mandatory arbitration and express no opinion on the applicability of the arbitration agreements to any other disputes.

For the foregoing reasons, the Pike Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jeremy S. Rogers
Louisville, Kentucky

Ashley C. Pack
Charleston, West Virginia

BRIEF FOR APPELLEES:

Nathan D. Brown
Williamson, West Virginia