RENDERED:  FEBRUARY 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1426-MR

LOUISVILLE AND JEFFERSON
COUNTY RIVERPORT AUTHORITY                                        APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                      HONORABLE MITCH PERRY, JUDGE
                        ACTION NO. 19-CI-003564


NEW ALBANY MAIN STREET
PROPERTIES, LLC D/B/A PORT OF
LOUISVILLE                                                        APPELLEE


                        OPINION
                        AFFIRMING

                        ** ** ** ** **

BEFORE:  ACREE, COMBS, AND MAZE, JUDGES.

ACREE, JUDGE:  The Louisville and Jefferson County Riverport Authority

appeals the Jefferson Circuit Court's opinion and order confirming an arbitration

award.  Riverport Authority contends the arbitrator exceeded his powers in making

the award and that the award should be vacated pursuant to KRS[1] 417.160(1)(c).

---

[1] Kentucky Revised Statutes.

We conclude the arbitrator did not exceed his powers. Therefore, we affirm the circuit court's opinion and order.

## BACKGROUND

Riverport Authority is a state agency created under the Riverport Authority Act, codified in KRS 65.510-650. Its purpose is to manage properties on the Commonwealth's waterways and to collect revenue derived from leasing and selling such properties. KRS 65.530. Pertinent here and as explained *infra*, the Kentucky Constitution explicitly prohibits the Riverport Authority from leasing its property for a term longer than twenty years. KY. CONST. § 164.[2]

In September 2009, Riverport Authority leased 300 acres to New Albany Main Street Properties, LLC D/B/A Port of Louisville to run a public port on the Ohio River. The parties subsequently entered into a lease agreement dated July 1, 2012. Riverport Authority claims New Albany continually sought reductions in rental payments, leading to renegotiations.

Renegotiations led to a new contractual arrangement. An agent or agents for Riverport Authority drafted a new lease agreement with terms identical to those of the lease agreement in dispute (the "Lease"). On March 7, 2016, its Board of Directors adopted a resolution saying, in pertinent part:

---

[2] Section 164 states: "No . . . municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years." KY. CONST. § 164.

WHEREAS, the parties [Riverport Authority and New Albany] have agreed to modifications of the Lease Agreement [dated July 1, 2012] . . . ; and

WHEREAS, this Modification is contingent upon [New Albany] being the Successful Bidder [for the lease of the property].

NOW THEREFORE BE IT RESOLVED, that the . . . Lease . . . in substantially the form attached is approved;

RESOLVED FURTHER, that the actions of the President of [Riverport] Authority with regard to the execution and delivery of the documents described herein are hereby ratified and affirmed in all respects and further the President is empowered to do all acts necessary and proper to effect the transactions contemplated by this resolution.

(Riverport Authority's Motion to Vacate Arbitration Award, Jefferson Cir. Ct., 19-CI-003564, Jun. 18, 2020, Exhibit B, p. 3.) The unexecuted Lease was attached to the Resolution and made a part of the Board's minutes.

As indicated in the resolution, Riverport Authority was required to "bid the lease of the Port Facility pursuant to a Request for Proposal on 3/11/16 and following the bidding process [New Albany] was the successful bidder." (*Id.*; Lease, p. 1.) The initial term of the Lease was to run "from the date of execution" until August 31, 2016. New Albany could then renew the Lease for three more terms of five years and a final term of four years and five months. The odd-length final term was necessary to avoid violating the aforementioned constitutional prohibition of leases longer than twenty years. That is, if New Albany were to

-3-

renew for each period, the total length of the first version would have been approximately nineteen years and ten months.

However, the Lease was originally drafted with the expectation that it would be executed in March 2016, as indicated on its face. It was not executed until August 19, 2016. As explained below, the failure to promptly execute the Lease created a physical impossibility of New Albany's performing the Lease's term-renewal provision. *See Consol. Realty Co. v. Richmond Hotel & Bldg. Co.*, 253 Ky. 463, 69 S.W.2d 985, 988 (1934) ("The term 'physical impossibility,' when used in reference to contracts, means practically impossible according to the state of knowledge of the date of the contract.").

The Lease required New Albany to provide written notice to renew the Lease three months before the end of a current term. Had the Lease been executed no later than May 31, 2016, New Albany could have given three months' notice to renew before the initial term ended on August 31, 2016. However, the Lease was not executed until twelve days before the end of the initial term. This created the physical impossibility of providing the obligatory three-months' renewal notice and Riverport Authority sought to solve the problem, presumably pursuant to the Resolution's broad delegation of authority to the President.

New Albany alleges Riverport Authority's solution to this physical impossibility created the new problem. That solution was to revise the Lease to

-4-

make the initial term approximately five years, beginning when signed and ending August 31, 2021; however, the revisers lacked the foresight to also shorten the duration of any other term so that the sum of the terms remained a constitutionally permissible period of less than twenty years.

The "revised" Lease was physically the same document as the original but with the handwritten modifications to the provision addressing the initial term. Both parties initialed the change. Because the length of the initial term was all that was changed, the result was a contract that, if all options to renew are exercised, would run for twenty-four and a half years and thus violate KY. CONST. § 164. The problem went unnoticed even after Riverport Authority sued New Albany.

Well before realizing the existence of this constitutional issue, the parties' relationship hit snags. From May 2019 to March 2021, Riverport Authority filed six lawsuits against New Albany, each one an attempt by Riverport Authority to evict New Albany.[3] The action before this Court stems from the first of these lawsuits alleging New Albany failed to satisfy its obligations as defined by the Lease. During discovery, the parties reached the conclusion that the duration of the "revised" Lease violated KY. CONST. § 164. Riverport Authority used both

---

[3] The arbitration award arising out of the first lawsuit filed in May 2019 is at issue in the appeal before this Court. Lawsuits two through five were all detainer actions filed in the Jefferson District Court. New Albany alleges the case numbers for each of these are 19-C-3564, 19-C-10189, 20-C-6520, and 20-C-6622. New Albany also alleges that the first three of these actions have been dismissed. As for the sixth lawsuit, New Albany alleges Riverport Authority filed it on March 5, 2021 with case number 21-CI-1367.

-5-

grounds–the constitutional violation and New Albany's alleged breaches–to move the circuit court for judgment on the pleadings and/or summary judgment.

Before ruling on Riverport Authority's motion, the parties voluntarily agreed to arbitrate the issues and the circuit court entered an agreed order to that effect. New Albany drafted the agreed order and Riverport Authority signed off on the language which expressly defines the scope of the arbitrator's authority to resolve: "(a) whether, under applicable law, there has been an actionable material breach of any provision or provisions of the Lease which is the subject of this action . . . ; and (b) whether the Lease which is the subject of this action is void or otherwise unenforceable on grounds raised in [Riverport Authority's] motion for Judgment . . . ." (Agreed Order, Jefferson Cir. Ct., 19-CI-003564, Oct. 31, 2019, pp. 1-2.)

In March 2020, the arbitrator rendered its "Reasoned Opinion"[4] summarizing its ruling as follows:

**A. Is this Lease void?**

**Ruling:**

No. The attempt to amend the Lease in handwriting is unenforceable, because [Riverport Authority] did not approve the amendment. This happened because the parties entered the Lease so close in time to the expiration

---

[4] "By agreement, the parties requested that the Arbitrator provide a Reasoned Opinion rather than findings of fact and conclusions of law." (Reasoned Opinion, Jefferson Cir. Ct., 19-CI-003564, Mar. 20, 2020, pp. 1-2.)

-6-

of the Initial Term that [New Albany] could not provide timely written notice of intent to renew the Lease. To effectuate the parties' undisputed intent, I find that [Riverport Authority] waived or is estopped from relying upon the written notice requirement for the first renewal term, so the agreed total term of the Lease (assuming [New Albany] timely renews it for all the possible terms) is less than 20 years.

. . . .

### B. Is [Riverport Authority] entitled to terminate the Lease for default?

**Ruling:**

No. [Riverport Authority] did not prove by a preponderance of the evidence that [New Albany] materially breached a term of the Lease that [New Albany] failed to cure timely. The law abhors a forfeiture, and, in this case, the law and equity do not justify forfeiture.

. . . .

### C. Conclusion

I find that the handwritten amendments to the Lease to alter the total term of the Lease are void. Because the parties continued to perform their obligations under the Lease as if the handwritten amendments were enforceable, I find that [Riverport Authority] waived or is estopped from enforcing the written notice requirement for the 1st Renewal Term.

I find that [Riverport Authority] has not proved an actionable material breach for which [Riverport Authority] provided written notice to cure that [New Albany] failed to cure.

(Arbitrator's "Reasoned Opinion," pp. 3-9.)

Riverport moved the circuit court to vacate the arbitration award, arguing the arbitrator exceeded his powers by "determin[ing] that Riverport [Authority] had 'entered' into a version of the [Lease] 'without the handwritten changes,' which was only 20 years in length." (Motion to Vacate, *supra*, pp. 3-4.)

Noting that judicial review of an arbitration decision is highly deferential, and citing Kentucky legal authority to that effect, the circuit court correctly noted that it "should not review the merits of the [arbitration] award, only whether the issues were submitted and covered by the contract"; *i.e.*, the agreed order to arbitrate. (Opinion and Order, Jefferson Cir. Ct., 19-CI-003564, Oct. 29, 2020, p. 4 (quoting *3D Enterprises Contracting Corp. v. Lexington-Fayette Urban County Government*, 134 S.W.3d 558, 561 (Ky. 2004)). Applying that standard, the circuit court reviewed the arbitrator's Reasoned Opinion as follows:

> [T]he Arbitrator concluded that the handwritten changes to the . . . Lease were void, but the original . . . Lease was still enforceable. He reasoned that the contractual terms of the . . . Lease itself in addition to previous course of conduct between the Parties demonstrated that neither [New Albany] nor Riverport Authority intended to execute an illegal lease. . . . . [T]he arbitrator ruled that the Riverport Authority Board of Directors had approved and entered the . . . Lease prior to the handwritten changes, therefore the original . . . Lease was still valid and the Parties were operating under the first Renewal Term period [August 31, 2016 to August 31, 2021]. The conclusion falls squarely within the scope of the Arbitrators [sic] powers . . . .

> With respect to the second issue, the Arbitrator made clear and reasoned conclusions, claim by claim, that there was no actionable material breach of the Lease. . . . His rulings . . . fall within the scope of the issues submitted before him for arbitration . . . . [T]his Court finds no error in the Arbitrators [sic] judgment.

(Opinion and Order, *supra*, p. 5.)

Based on its measured and disciplined review of the arbitrator's "Reasoned Opinion," the circuit court entered its opinion and order confirming the arbitration award as required by statute. KRS 417.160(4) ("If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award."). Riverport Authority appeals. We affirm.

ANALYSIS

We begin by pointing out Riverport Authority's erroneous framing of the issue before this Court when it says "this case involves a determination concerning the 'construction and interpretation' of an agreement, particularly, the . . . Lease . . . ." (Appellant's brief, p. 15.) It does not; at least this appellate review does not.

To be clear, "an arbitrator's resolution of factual disputes and his application of the law are not subject to review by the courts." *Don Booth of Breland Group v. K&D Builders, Inc.*, 626 S.W.3d 601, 607 (Ky. 2021) (quoting *Conagra Poultry Co. v. Grissom Transp., Inc.*, 186 S.W.3d 243, 245 (Ky. App. 2006)). That includes factfinding and legal conclusions related to an arbitrator's

analysis of a question of contract law such as the arbitrator was authorized to address by the parties' agreed order to arbitrate. Neither this Court nor the circuit court is authorized to second-guess the arbitrator's interpretation of the Lease.

Riverport Authority's citation to authority suggesting otherwise is misleading, though we do not say intentionally so. For example, it quotes *Frear v. P.T.A. Industries, Inc.*, for the principle of law that "the construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court . . . ." 103 S.W.3d 99, 105 (Ky. 2003) (citations omitted). But the parties did not allow these contract issues "to be decided by the court"–that would have made the court's resolution of questions regarding the Lease subject to *de novo* appellate review. Instead, the parties chose to arbitrate. That makes principles of law relating to the subject of arbitration–the Lease–irrelevant.[5]

Furthermore, this case is not about an arbitration agreement's enforceability or its breach, nor does it involve "any defect in the underlying agreement to arbitrate the dispute." *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 304 (6th Cir. 2008) (cited in Appellant's brief, p. 15). We are not persuaded

---

[5] Riverport Authority's brief indicatees the agreed order to arbitrate is an arbitration contract that this Court may review *de novo*. Later in this Opinion, we address whether the arbitrator exceeded his powers by inappropriately deciding an issue not included in the scope of the agreed order to arbitrate. That is a proper question of law for this Court to address *de novo*. *See Breland Group*, 626 S.W.3d at 610 (*de novo* review concluded "arbitrator's evaluation of the evidence and conclusions of law . . . was properly within the scope of the arbitrator's authority").

by cases that do not address the issue Riverport Authority actually presents to this Court: whether the arbitrator exceeded his powers. KRS 417.160(1)(c).

"[A]n arbitrator exceeds his authority when he decides an issue not appropriately submitted for arbitration, *Wagner*[ *v. Drees Co.*], 422 S.W.3d [281,] 283 [(Ky. App. 2013)], not through a misapplication of the law. *Conagra Poultry Co.*, 186 S.W.3d at 245." *Breland Group*, 626 S.W.3d at 608. Much of Riverport Authority's brief argues the factual and legal errors in the arbitration award. As just noted, neither KRS 417.160 nor Kentucky jurisprudence authorizes any court to vacate an arbitration award for such errors.

Focusing on the issue this Court can review, Riverport Authority claims the issue decided by the arbitrator that was not submitted for arbitration was whether the original draft of the Lease was enforceable as it existed prior to handwritten revisions made in August 2016, and "[s]pecifically, . . . whether the attempt to amend the Lease with the handwritten changes [wa]s binding." (Appellant's brief, p. 2 (quoting Reasoned Opinion, p. 3)).

This Court's task, then, is to determine the scope of authority granted the arbitrator and whether interpreting the Lease fell within it. The agreed order to arbitrate identified the scope of what the arbitrator was to decide as: "whether the Lease which is the subject of this action is void or otherwise unenforceable on grounds raised in [Riverport Authority's] motion for Judgment . . . ."

-11-

First, it seems to this Court that, as a necessary predicate to determining whether the Lease is void or otherwise unenforceable, the arbitrator had to understand the contract itself. He heard five days of testimony, received other evidence, and allowed argument on that point and on various, necessary questions that were obviously relevant to the issue Riverport Authority acknowledges as being within the powers granted by the agreed order. Did the parties execute the Lease before or after the revisions? Did the Riverport Authority Board of Directors authorize the revisions? Did that matter if the President had broad power to effectuate the parties' intent? None of these questions is within the scope of our review. But, as a matter of common sense and logic, we cannot see how it was possible for the arbitrator to carry out his charge without determining what the Lease meant by answering them. *See Southworth v. Commonwealth*, 435 S.W.3d 32, 45 (Ky. 2014), *as modified on denial of reh'g* (Jun. 19, 2014) (internal quotation marks and citation omitted) ("logic, like common sense, must not be a stranger in the house of the law.").

Second, the issues submitted for arbitration include those "grounds raised in [Riverport Authority's] motion for Judgment . . . ." When Riverport Authority moved for judgment, all the aforementioned questions and more were unresolved, including whether the Lease was ambiguous. Why else would Riverport Authority argue in its memorandum supporting its motion for judgment

that "interpretation of a contract, including whether it is ambiguous, is a question of law for the court"? (Memorandum in Support, Jefferson Cir. Ct., 19-CI-003564, Sep. 25, 2019, p. 3.) It also argued that "the construction and legal effect of a written instrument is a matter of law for the court." (*Id.*, p. 16.) This Court agrees. And when Riverport Authority agreed to arbitrate, those same questions and matters of law necessary to the circuit court's resolution of the motion for judgment became, necessarily, within the scope of the arbitrator's powers.

This Court acknowledges that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Linden v. Griffin*, 436 S.W.3d 521, 525 (Ky. 2014) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 855 (Ky. 2004) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). Had we any doubts, we would resolve them by concluding the arbitrator's award and the underlying conclusions upon which it is based were within the scope of arbitration as delineated by the agreed order.

As did the circuit court, we find no basis upon which to vacate the arbitration award because it does not violate KRS 417.160(1)(c).

## **CONCLUSION**

For the foregoing reasons, we affirm the arbitration award and the Jefferson Circuit Court's order confirming the arbitration award.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Donald L. Cox
Matthew P. Cox
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Donald L. Cox
Louisville, Kentucky

BRIEF FOR APPELLEE:

Kenneth A. Bohnert
F. Chris Gorman
Edward F. Busch
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Kenneth A. Bohnert
Louisville, Kentucky